611 A.2d 1366

**Francis BURNIER, Appellant,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 1992.

Decided June 16, 1992.

Francis Burnier, pro per.

William W. Shakely, for appellee.

Before CRAIG, President Judge, PELLEGRINI, J., and BLATT, Senior Judge.

BLATT, Senior Judge.

Francis Burnier (appellant) appeals from an order of the Court of Common Pleas of Tioga County (trial court) granting a permanent injunction enjoining interference with work conducted by the Department of Environmental Resources (DER) upon the right-of-way of the Consolidated Rail Corporation (Conrail). We affirm.

In 1988, Conrail determined that it would cease rail operations along a 62–mile segment running through the scenic Pine Creek Gorge in Tioga and Lycoming Counties and, pursuant to Interstate Commerce Commission (ICC) statutes and regu-

lations, filed a notice of exemption. 49 C.F.R. 1152.50(d). On September 12, 1988, the ICC issued a Notice of Interim Trail Use or Abandonment [1] authorizing the conversion of the right-of-way from a rail to a trail use pursuant to Section 8(d) of the National Trails System Act (National Act).[2] On September 18, 1990, DER, the interim trail operator, and Conrail entered into a Trails Act Lease Agreement.

Appellant owns fee title to and asserts a reversionary interest in property underlying Conrail's right-of-way. On April 4 and May 16, 1991, he interfered with the attempts of DER employees to gain access to the right-of-way to perform rough grading and drainage work. He blockaded the right-of-way with farm equipment and removed keys from DER machinery. On May 23, 1991, DER instituted an equity action to enjoin the appellant from further interference with the exercise of its leasehold rights.

The trial court entered an order granting a permanent injunction on August 9, 1991. In its accompanying opinion, the trial court concluded that the appellant, as reversionary owner, had no right to interfere with the exercise of DER's leasehold rights in Conrail's right-of-way. The trial court also indicated that it had no jurisdiction to hear either a takings claim under the National Act or the issue of DER's compliance with the state Rails to Trails Act,[3] deferring respectively to the United States Claims Court and to this Court. Appellant appeals from the August 9 order granting the permanent

1. Interstate Commerce Decision and Notice of Interim Trail Use or Abandonment, No. AB–167, Decision of September 12, 1988.

2. 16 U.S.C. § 1247(d). *See also* 49 C.F.R. § 1152.29(a), (d). The purposes of the National Act are to preserve public access to and appreciation of outdoor areas and to preserve established railroad rights-of-way for future reactivation of rail service. 16 U.S.C. § 1247(d); *Preseault v. I.C.C.*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).

3. Act of December 18, 1990, P.L. 748, 32 P.S. § 5611–5622. The purpose of the Rails to Trails Act "is to acquire, operate, maintain and develop available railroad rights-of-way for public recreational trail use." 32 P.S. § 5613. "Available railroad right-of-way" is any right-of-way proposed or approved for abandonment before the ICC. 32 P.S. § 5612. DER is the administering agency for the Rails to Trails Act.

injunction.[4]

The issue before this Court on appeal is whether the trial court properly enjoined the appellant from interfering with the exercise of DER's leasehold rights in Conrail's right-of-way.[5] The owner of a servient estate may use the land for any purpose so long as the use is reasonable and does not interfere substantially with an easement, *Rodier v. Township of Ridley*, 141 Pa.Commonwealth Ct. 117, 595 A.2d 220 (1991); however, where a legal right to an easement is clear, an action in equity is permitted to protect that right. *Brodt v. Brown*, 404 Pa. 391, 172 A.2d 152 (1961).

The trial court found that DER holds a leasehold interest in Conrail's right-of-way and that the appellant, notwithstanding his reversionary interest, interfered with the exercise of DER's leasehold rights. While not directly challenging the validity of the lease, in defense of his actions the appellant asserts that Conrail "abandoned" its right-of-way, thereby triggering his reversionary interest. However, section 1247(d) of the National Act specifically provides that interim trail use is not an abandonment of a railroad right-of-way. 16 U.S.C. § 1247(d). Moreover, in *Preseault v. I.C.C.*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), which upheld

**4.** When reviewing a decision of a trial court in an equity proceeding, this Court's scope of review is limited to determining whether the findings are supported by substantial evidence, whether an error of law was committed, or whether the trial judge abused his discretion. *Millstone Enters., Inc. v. Dep't of Environmental Resources*, 101 Pa.Commonwealth Ct. 408, 516 A.2d 814 (1986).

**5.** Because this equitable proceeding concerns the relative property rights of the parties in Conrail's right-of-way, the trial court properly refrained from addressing the issue of DER's compliance with the state Rails to Trails Act, an issue which is collateral to this proceeding and justiciable under this Court's exclusive original jurisdiction. 42 Pa.C.S. § 761(a)(1), (b); *cf. Condemnation for Route 58018*, 31 Pa.Commonwealth Ct. 275, 375 A.2d 1364 (1977). Therefore, neither whether DER complied with the Rails to Trails Act nor whether the doctrine of "unclean hands" applies as a result of DER's non-compliance are issues properly before this Court with respect to this controversy. The appellant's remaining issues were not raised below and cannot be heard for the first time on appeal. *Dep't of Environmental Resources v. Rushton Mining Co.*, 139 Pa.Commonwealth Ct. 648, 591 A.2d 1168, *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

the constitutionality of the National Act against takings and commerce clause violation claims notwithstanding the existence of reversionary interests in the affected property, the Supreme Court recognized that although state law creates and defines the scope of property interests, it is "subject . . . to the ICC's 'exclusive and plenary' jurisdiction to regulate abandonments." 494 U.S. at 8.[6]

 Further, under Pennsylvania law the termination of a railroad estate requires an actual abandonment demonstrated by an intent to abandon accompanied by external acts effecting that intention. *Lacy v. East Broad Top R.R. & Coal Co.*, 168 Pa.Superior Ct. 351, 77 A.2d 706 (1951). Mere nonuse of a rail line does not constitute abandonment. *Quarry Office Park Assocs. v. Philadelphia Elec. Co.*, 394 Pa.Superior Ct. 426, 576 A.2d 358 (1990). Nor does conveyance of the interest held by a railroad to a "non-railroad" necessarily constitute abandonment. *Id.* Guided by these principles and in light of the purpose of the National Act to preserve established railroad rights-of-way for future reactivation of rail service, the inclusion of Conrail's right-of-way in the rail to trail conversion program is not an abandonment.

Because its finding that the appellant interfered with the exercise of DER's leasehold rights in Conrail's right-of-way is supported by competent evidence in the record, the trial court neither abused its discretion nor committed an error of law in granting the injunction. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this the 16th day of June, 1992, the order of the Court of Common Pleas of Tioga County in the above-captioned matter is hereby affirmed.

**6.** At least one state court has expressly held that, as a matter of state law, a rail to trail conversion does not trigger reversionary interests. *State by Washington Wildlife Preservation, Inc. v. State*, 329 N.W.2d 543 (Minn.), *cert. denied, Washington Wildlife Preservation, Inc. v. Minnesota Dep't of Natural Resources*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983).